## 6188.    THOMAS *v.* THE STATE.

1. There was testimony from which the court could have found that an original letter from the prosecutrix to the accused was in his possession; and since he could not lawfully be compelled to produce it, the court did not err in admitting secondary evidence as to its contents. *Farmer* v. *State,* 100 *Ga.* 41 (28 S. E. 26); *Moore* v. *State,* 130 *Ga.* 322, 332 (60 S. E. 544); *Nalley* v. *State,* 11 *Ga. App.* 15, 19 (74 S. E. 567).

2. The court did not err in declining to admit testimony relative to the disposition of the bastard child, since such evidence could not throw light on the question at issue. Besides, the alleged error in the exclusion of this testimony is not precisely pointed out by the exception.

3. No reversible error was committed in admitting testimony as to the general good character of two female associates of the prosecutrix; since proof of their good character tended to contradict evidence offered by the defendant to show intemperate, loose, and careless behavior on the part of the prosecutrix while she was in company with these persons and himself.

4. One distinct and unequivocal statement by the judge in his charge to the jury, that the jury must be satisfied beyond a reasonable doubt of the guilt of the accused of the offense charged in the accusation upon which he is being tried, is sufficient, and it is not necessary to reiterate this instruction in charging as to various phases of the case developed by the evidence.

(a) The fact that the judge charged that the jury must be satisfied "beyond a reasonable doubt" that the accused was guilty of the offense of fornication, but instructed as to the offense of seduction that the jury must be satisfied of the guilt of the accused "to a moral and reasonable certainty," without making any specific reference in that immediate connection to the doctrine of reasonable doubt, is not ground for a new trial, as tending to suggest to the jury that a greater degree of certainty is necessary to warrant a conviction for the one offense than for the other. See *Austin* v. *State*, 6 *Ga. App.* 211 (64 S. E. 670); *Norman* v. *State*, 10 *Ga. App.* 802 (74 S. E. 428), where the jury were generally instructed, elsewhere in the charge, that they could not convict the defendant unless they were satisfied of his guilt beyond a reasonable doubt.

5. "It was not reversible error, on the trial of one under an indictment charging him with the commission of the crime of seduction by 'persuasion and promises of marriage only,' for the court to give the jury the full definition of the crime of seduction as contained in the Penal Code, § 378, including the accomplishment of that crime not only by 'persuasion and promises of marriage,' but also by 'other false and fraudulent means,' where the court subsequently instructed the jury, without specially retracting or explaining anything contained in the above instruction, in effect that the State relied for conviction upon proof of persuasion and promises of marriage;" and where the jury were so restricted to the evidence relating to "persuasion and promises of marriage" only, it was not error to omit any instruction as to what would constitute the "other false and fraudulent means" by which the crime could be accomplished. *Thomas* v. *State*, 146 *Ga.* 346 (91 S. E. 109).

6. In the trial of the defendant in this case, for the offense of seduction, under the evidence as a whole and considered in connection with the entire charge the following instruction to the jury was reversible error: "The proof of lascivious indulgences and wanton dalliances, with other evidence short of direct proof of the overt act, may authorize the jury to infer actual guilt of the illicit act; but it is not

a lawful defense for the accused to blacken or blackball the character of his alleged victim by proving loose declarations or showing imprudent or immodest conduct on the part of the woman he is accused of seducing." Considering the entire charge, the real defense relied upon, and the evidence offered in support of that defense, this charge was harmful, (*a*) "because it tended to discredit in the minds of the jury the defense interposed by the prisoner, that the woman he was charged with seducing was not a virtuous female," and (*b*) "because it contained an intimation by the court that the facts sought to be proved by the defendant constituted no lawful defense, but amounted only to an effort on his part to 'blacken and blackball the character of his alleged victim;' " and also (*c*) because this language of the court tended "to raise in the minds of the jury such a prejudice against the defendant and his defense as to require the setting aside of the verdict of guilty." *Thomas* v. *State*, supra.

7. In view of the fact that there must be a new trial of this case, it is not necessary to consider the grounds of the motion for a new trial based upon alleged newly discovered evidence; nor need the remaining assignments of error be passed upon, since they are either not sufficiently definite and complete to present any question for determination, or are without substantial merit, or else relate to alleged errors which can scarcely recur on another trial.

DECIDED JANUARY 23, 1917.

Indictment for seduction; from Laurens superior court—Judge Larsen. November 3, 1915.

*J. H. Hall, Davis & Sturgis, C. A. Weddington, I. N. Eubanks, J. A. Thomas,* for plaintiff in error.

*E. L. Stephens, solicitor-general,* contra.

WADE, C. J. It is unnecessary to discuss any ground of the motion for a new trial except the particular ground upon which the lower court is reversed; and no extended discussion of that ground is required, in view of the ruling made by the Supreme Court upon the abstract question decided by that court in this case, and left for application by the Court of Appeals.

The precise question submitted to the Supreme Court, with the answer made thereto by a majority of that court, was as follows: "In the trial of a case of seduction, was the following charge to the jury error because it tended to discredit in the minds of the jury the defense interposed by the prisoner that the woman he was charged with seducing was not a virtuous female, or because it contained an intimation by the court that the facts sought to be proved by the defendant constituted no lawful defense, but amounted only to an effort on his part to 'blacken and blackball the character of his alleged victim;' or was this language of the

court calculated to raise in the minds of the jury such a prejudice against the defendant and his defense as to require the setting aside of the verdict of guilty: 'The proof of lascivious indulgences and wanton dalliances, with other evidence short of direct proof of the overt act, may authorize the jury to infer actual guilt' of the illicit act; but it is not a lawful defense for the accused to blacken or blackball the character of his alleged victim by proving loose declarations or showing imprudent or immodest conduct on the part of the woman he is accused of seducing'? The Court of Appeals is instructed that the excerpt from the charge quoted in the above question is erroneous for the reasons stated; but whether the error was cured or the evidence was such as to avoid the necessity of a new trial depends upon an entire review of the case, which can be done only by the Court of Appeals."

It will appear, from an examination of the foregoing question and answer, that the Supreme Court ruled upon the abstract point involved, and held definitely "that the excerpt from the charge quoted in the above question is erroneous for the reasons stated," which includes *all* the reasons stated or suggested in the question; but left it open for this court to determine whether or not the error was cured elsewhere in the charge, or whether the evidence as a whole was such as to avoid the necessity of a new trial on account of this error—or in other words, whether under a review of the entire case the error was harmful to the accused.

Elsewhere the court charged the jury as follows: "A virtuous unmarried female in the meaning of the law is one who at the time of the alleged seduction has never previously had unlawful sexual intercourse with a man. An unmarried female who is a virgin is virtuous, but if she with her consent unlawfully parted with her virginity she is not virtuous. The test by which a jury are to determine whether the female alleged to have been seduced was virtuous at the time of the alleged seduction is physical purity and not moral chastity. In the present case you are to consider and determine whether or not Ruby Green [the woman alleged to have been seduced] had parted with her virginity, that is, whether she had had sexual intercourse with any man prior to the alleged seduction." The court further charged that "The presumption of the law in this case is that Ruby Green prior to the date of the alleged seduction by the defendant was a virtuous woman. The

presumption may be overcome by evidence, either direct or circumstantial. In determining whether or not the prosecutrix, Miss Ruby Green, was or was not virtuous prior to the date of the alleged seduction, you may consider any evidence, direct or circumstantial, which shows the want of previous chastity, either mental or physical, a debauched mind, lewd or lascivious conduct anterior to the date of the alleged seduction, if such be shown by the evidence."

While the above-quoted excerpts in a general way authorized the jury to consider any evidence showing immodest, lewd, or lascivious conduct on the part of the prosecutrix in determining whether or not she was in fact, at the time of the alleged seduction, a physically chaste woman, the court followed up these general references to the circumstantial evidence which the jury might consider in arriving at such a conclusion (in the absence of direct proof of physical unchastity on her part before the time of the alleged seduction), with the following *specific* instruction directly relating to what was virtually the only defense interposed by the accused, to wit: "The proof of lascivious indulgences and wanton dalliances with other evidence short of direct proof of the overt act may authorize the jury to infer actual guilt of the illicit act, *but it is not a lawful defense for the accused to blacken or blackball the character of his alleged victim by proving loose declarations or showing imprudent or immodest conduct on the part of the woman he is accused of seducing.* [Italics ours.] He must go further and prove that she had lost her personal chastity prior to his alleged seduction of her, or he must prove such facts as, under the law, would raise a *violent* [italics ours] presumption that she had done so; such facts as would, under the law, authorize the jury to find that she had had sexual intercourse with a man before the alleged seduction."

The previous references by the court to evidence which might tend to show immodest, lewd, or lascivious conduct on the part of the prosecutrix anterior to the date of the alleged seduction were general in their nature, as was also the particular instruction quoted above, that "proof of lascivious indulgences and wanton dalliances with other evidence short of direct proof of the overt act may authorize the jury to infer actual guilt of the illicit act;" whereas the further instruction, that "it is not a lawful defense for

the accused to blacken or blackball the character of his alleged victim by proving alleged loose declarations on the part of the woman he is accused of seducing," tended to impress upon the jury that all the evidence offered by the accused for the purpose of showing by inference that the prosecutrix was, prior to the date of the alleged seduction, a woman of lewd character, constituted no defense which would itself authorize the jury to acquit the accused, even should they arrive at the conclusion, from any evidence of immodest or lascivious conduct, that she was not physically chaste when the alleged crime was committed. Not only did the charge as a whole fail to correct the error contained in this excerpt, but in the same connection the court further said that the defendant "must go further and prove that she had lost her personal chastity prior to his alleged seduction of her, or he must prove such facts as, under the law, would raise a violent presumption that she had done so; such facts as would under the law authorize the jury to find that she had had sexual intercourse with a man before the alleged seduction." The jury were not only advised in effect that none of the evidence introduced by the accused, to sustain the real defense interposed by him (that the woman was not at the time of the alleged seduction a virtuous unmarried female, because of behavior on her part which, measured by the ordinary rules of human conduct and experience, definitely authorized the contrary inference), made out a *lawful defense,* but were also instructed that the defendant must either prove that she had lost her personal chastity before the alleged seduction, or prove such facts as "would raise a violent presumption that she had done so,"—the facts necessary to raise such a "presumption" being such as would authorize the jury "to find that she had had sexual intercourse with a man before the alleged seduction." When considered in connection with the positive statement by the court that it was not "a lawful defense for the accused to blacken or blackball the character of his alleged victim by proving loose declarations or showing imprudent or immodest conduct" on her part, the jury may well have understood from the last instruction quoted above that they were not authorized to conclude that the prosecutrix was a lewd woman unless there was either credible direct evidence of previous sexual intercourse on her part, or else there were circumstances in proof which, while falling short of

such absolute proof of physical unchastity, nevertheless showed that the defendant had been so situated with some man other than the defendant at a time and place prior to her alleged seduction by him that sexual intercourse must have followed as a natural and *practically inevitable consequence.*

It is clear, therefore, that the charge of the court did *not* correct the harmful error contained in this excerpt, which reflected on the value of the testimony offered by the accused as a foundation for the inference he sought to have the jury draw that the prosecutrix was physically unchaste at the time of her alleged seduction, because of previous sayings and conduct totally irreconcilable with the belief that she was even physically pure. No extended review of the evidence is necessary to demonstrate that the reference by the court to the testimony of the accused which was offered to show that the conduct of the prosecutrix was of such a character as to support a legitimate inference to be drawn by the jury that she was in fact a lewd woman could have been harmless to the accused, in the light of the entire record.

One charged with the offense of seduction is from the outset placed at a decided disadvantage, because the very nature of the crime usually precludes the possibility of knowledge on the part of any person, other than the accused and the prosecutrix, as to the time and manner of its consummation. Unless the defendant is so fortunate as to be able to show beyond all possibility of question that he was not in the society of the alleged victim at or about the time fixed by her, or else can show it was physically impossible for him to commit the crime charged, he must generally depend for any effectual defense upon direct proof that his alleged victim was not physically chaste at the time he was charged with seducing her, or proof that her acts and conduct had been so immodest and lascivious as to compel the inference (in the absence of direct proof of the fact) that she was in truth a lewd woman. It is well-nigh impossible as a rule to establish by direct proof that another man has had intercourse with the professed victim of the accused, for generally the other men involved are not easily to be discovered, nor are they ready to admit their own lascivious conduct or to assail the character of a woman who has bestowed her favors upon them, and seldom is it the case that a third person witnesses the performance of such an act. It is usually done in

secrecy, and not openly or upon the house tops. The oath of the woman claiming to have been seduced is sufficient in most instances to establish the fact of the intercourse to the satisfaction of a jury (especially where, as in this case, she has given birth to a bastard child); and where she testifies further that the intercourse was brought about by persuasion and promises of marriage, or by such other false and fraudulent means as are recognized by law, the accused may bitterly denounce her every statement which tends to criminate him, and boldly assert his innocence, and yet if he is unable to establish a difficult alibi, extending possibly over many months, and thus show that the crime could not possibly have been committed by him, or else conclusively demonstrate his sexual incapacity to commit this offense, he might be utterly unable to preserve his name from infamy and his person from the punishment awarded to the perpetrator of an infamous crime, notwithstanding his entire innocence, unless some other defense recognized by law be available. As already suggested, if the accused was exceedingly fortunate, he might perhaps obtain direct proof that the woman was not virtuous, or if she was a *notoriously* lewd character, he might be able to establish this fact without special difficulty; but generally he must rely only upon testimony tending to show such conduct on the part of the woman prior to the time of the alleged seduction as would authorize the jury to *infer* that a woman guilty thereof was not in fact physically chaste. At best, the average juror would look with aversion upon a defense of this character, and unless the proved conduct of the prosecutrix was so immodest or lascivious as almost to *compel* the conclusion that no woman guilty thereof could be physically chaste, a jury composed of average men, with natural chivalry towards the other sex, would be inclined to visit their disapproval upon an alleged seducer who attempted to set up such a defense. The defense being lawful, but nevertheless one difficult to sustain under ordinary conditions, it is vitally important that it be not discredited by any suggestion or intimation from the trial judge, and that the accused be allowed the full benefit thereof, especially where it is practically his sole defense.

Any comment on the evidence would be improper, in view of the fact that the case must be retried. It is enough to say that the defendant was charged with the commission of the crime by

persuasion and promises of marriage only, and while he admitted the intercourse, but in his statement to the jury denied making any promises of marriage, his denial was unsupported, and he must have relied almost entirely upon the defense that the prosecutrix had lost her physical chastity before the date of her alleged seduction by him; and there was some proof of conduct on her part from which (if credited) the jury might have drawn this inference, irrespective of the accusing statements made by the defendant to the jury.

Under the ruling by the Supreme Court, the excerpt from the charge of the court touching the value of the testimony under discussion must undoubtedly have conveyed to the jury an intimation that in the opinion of the trial judge the facts which the defendant sought to prove constituted no lawful defense, but amounted to an attempt by him to besmirch the character of his alleged victim, and the language of the court was calculated to suggest strongly to the minds of the jurors that the defendant was engaged in an unmanly attack on the reputation of a woman not shown to have parted with her virtue, thereby exciting their prejudices against the defendant and seriously discrediting the defense interposed by him.

It is true, as held by this court in *Hays* v. *State,* 16 *Ga. App.* 20 (7), 21 (84 S. E. 497), that, "under the law in Georgia a woman is a virtuous female if her body be pure; and if she has never had sexual intercourse with another, he who first has sexual intercourse with her may be guilty of seduction though both her mind and heart be impure;" but the particular instruction in this case, in the light of the evidence, and taking into consideration the charge as a whole, must undoubtedly have minimized the effect of the testimony relating to alleged improper conduct on the part of the prosecutrix which was presented to support an inference that she was not merely debauched in mind, but unchaste in body, and must have conveyed to the jury a very strong intimation that in the opinion of the judge the evidence referred to was wholly insufficient to support any such inference.

The judgment of the lower court, overruling the motion for a new trial, is therefore

*Reversed. George and Luke, JJ., concur.*